**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **SCOTT SANDERS AND LISA SANDERS,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**BRUCE ETHINGTON and MOUNTAIN AMERICA FEDERAL CREDIT UNION,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:10CV183DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on cross Motions for Summary Judgment and Plaintiffs' Motion to Strike Affidavit of Cathy Smoyer. On September 24, 2014, the court held a hearing on the motions. At the hearing, Plaintiffs were represented by Matthew Wadsworth and Defendant Mountain America Credit Union was represented by Joseph A. Skinner. The court took the motions under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relevant to the motion. Now being fully advised, the court enters the following Memorandum Decision and Order.

**BACKBROUND**

The Sanderses purchased their home on October 10, 2006. The original loan was serviced through CitiWide Home Loans, and the Sanderses began preparing to refinance with CitiWide in April 2007. Sometime between the first credit check on April 6, 2007, and the second credit check on May 5, 2007, Salt Lake City Credit Union ("SLCCU") reported twelve

new, maxed-out accounts on the Sanderses' credit which, according to the Sanderses, destroyed the Sanderses' credit and made it impossible to refinance with CitiWide. After being confronted, SLCCU apologized for the misreporting, offered to fix the Sanderses' credit, and offered to make amends by providing the Sanderses with a "free" refinance. The Sanderses accepted this offer and closed on a new loan in the amount of $283,903.06 on June 6, 2007. Sometime between June of 2007 and December 2008, Mountain America Credit Union ("MACU") merged with SLCCU.

When the Sanderses loan closed on July 6, 2007, the Sanderses signed an acknowledgment that they each received two copies of the Notice of Right to Cancel. However, they now claim that they each received only one copy of the notice. MACU argues that the Sanderses were each given one copy at the closing that they signed and returned and one copy that they took with them. This argument is supported by the evidence that one signed copy from each of the Sanderses is contained in the closing file and one signed copy from each of the Sanderses was signed at a later time and returned to MACU. The Sanderses sent MACU a Qualified Written Request pursuant to the Real Estate Settlement and Procedures Act and requested their closing documents. The Sanderses state that the documents they received contained only one copy of Notice of Right to Cancel Form. Because there was only one copy in the file, the Sanderses argue that they did not receive the required two copies of the form. The parties, therefore, dispute whether the Sanderses were each given two copies of the form at the closing of their loan.

The Sanderses also claim that at the closing on July 6, 2007, they were required to sign a "Customer's Statement of Non-Rescission," and to post-date it as of July 11, 2007. MACU denies that the document was post-dated. However, the Sanderses contend that they were told

that if they did not sign and date the documents as instructed by the escrow officer, their loan would be denied. The Sanderses assert that this additional document is another violation of TILA. MACU asserts that TILA does not specifically prohibit this type of additional document.

The Sanderses ran into difficulties paying their mortgage and sought a refinance in March 2009, that was denied. A Notice of Default was filed on the property on October 30, 2009. The Trustee executed a Notice of Trustee's Sale stating that the property would be sold on March 2, 2010. On March 2, 2010, the date of the Trustee's Sale, the Sanderses filed the current lawsuit alleging TILA violations and seeking rescission of the mortgage. MACU postponed the Trustee's sale to March 23, 2010. The sale occurred on March 23, 2010, and the Trustee sold the property to MACU, who was the highest bidder, for $195,000. On April 20, 2010, the Sanderses sent MACU signed Right to Cancel Forms seeking to rescind their loan.

This case is currently on remand from the Tenth Circuit. Prior to the appeal, the court granted a motion for judgment on the pleadings dismissing all claims against MACU. The Tenth Circuit upheld dismissal of all claims except the TILA rescission claim. This court had dismissed the TILA claim on the grounds that the Sanderses' failed to plead that they could tender the amount of the loan. The Tenth Circuit refused to make it a pleading requirement to state that the plaintiff could tender to defendant the amount of the loan proceeds. The Tenth Circuit stated that "[a]lthough the rescinding consumer need not plead an ability to repay the proceeds of the loan, the district court may nevertheless, in an appropriate case, use its equitable powers to protect a creditor's interest during the TILA rescission process." The court then explained that merely tendering the house is not sufficient if it does not equal the loan proceeds.

On remand, MACU argued that the case was moot because the home had been sold, MACU had declined to seek the $100,000 deficiency judgment from the Sanderses, and

rescission was impossible or inequitable. The Sanderses sought judgment as a matter of law that there was a TILA violation. This court explained that arguments from counsel were not enough and Plaintiff would need evidence proving the TILA violation, and MACU would need evidence that recision was inequitable or impossible. Therefore, the court gave the parties time to conduct discovery. The parties have now filed cross motions for summary judgment.

## DISCUSSION

There are two main issues presented by the cross motions for summary judgment. First, do the Sanderses' have the right to the three-year rescission period under TILA? To qualify for the three-year period rather than the three-day period, the Sanderses must demonstrate that there was in fact a TILA violation. Second, the court must determine whether this is an appropriate case for the court to exercise its equitable powers to protect the creditor's interests during the rescission process.

### 1. Right to Rescission

The Sanderses claim that they each only received one copy of the Notice of Right to Cancel when TILA requires that they each receive two copies. Each of the Sanderses signed a document stating that they received two copies. In addition, each of the Sanderses returned a separate Notice of Right to Cancel form when they sought rescission of the loan. The Sanderses claim that when they requested copies of the closing documents, there was only one copy of the form and this demonstrates that they each received only one copy. However, the evidence demonstrates that they each signed one copy at closing and each signed a copy that they sent to MACU to rescind the loan. There are differences with the forms that were signed and returned. These differences show that the Sanderses received one copy, like the copy in the closing file, and one copy like the copies they returned to MACU.

On summary judgment, the court cannot weigh the evidence or make credibility determinations. However, the parties do not appear to dispute what occurred in this case, only the consequences of what occurred. There is no evidence contradicting the fact that the Sanderses signed copies at the closing and then signed separate copies three years later to rescind.

The Sanderses argue that TILA requires that they each leave the closing with two copies. However, the Sanderses do not cite to any case law stating that it is a TILA violation for two of the signed copies to be returned to the lender at the time of closing and two to be taken by the homeowners to be used later, as occurred in this case. TILA requires two copies to be provided to each homeowner at closing and there was no technical violation of that requirement in this case. Even if the court were to look beyond the technical requirements of TILA to the substance of the rights, the court finds no violation because the Sanderses were not prejudiced or damaged in any way by returning two copies and keeping two copies to use at a later date. Because there was no TILA violation based on the number of copies of the Notice of Right to Cancel form provided to the Sanderses at the closing, the court finds that the Sanderses fall within the three-day right to rescission rather than the three-year right to rescission.

The Sanderses also argue that there was a TILA violation because SLCCU's required them to sign a "Customer's Statement of Non-Rescission." The Sanderses contend that they were told that if they did not sign and date the documents as instructed by the escrow officer, their loan would be denied. Although the Sanderses assert that this additional document is a violation of TILA, TILA does not specifically prohibit this type of additional document. In addition, even though they signed the document, the facts of this case demonstrate that it did not deter the Sanderses from sending in a Notice of Right to Cancel form in an attempt to rescind the

loan. Because the form is not specifically prohibited by TILA and did not deter the Sanderses from attempting to rescind, the court finds no TILA violation based on the additional document.

**2. Equities**

Even if the Sanderses were entitled to the three-year period to rescind their loan. MACU asks the court to reorder the steps of the TILA rescission process based on the equities of the case. MACU argues that there a deficiency of just over $100,000 from the Trustee's sale that they chose not to pursue and that they let the Sanderses remain in the house for two years after the foreclosure sale, rent free. In addition, MACU did a Notice to Quit to the Sanderses while the case was on appeal and the house has been resold to third parties, who are now entitled to remain in the house. Therefore, the only issue with rescission is whether the Sanders can tender the loan proceeds and it would be in the Sanderses best interest for the issue to be considered moot.

The Sanderses claim that MACU has treated them too inequitably to receive any equitable help from the court. Under TILA, when the Sanderses sought rescission, MACU should have returned all payments and finance charges it had received from the Sanderses. Only after MACU returned that money are the Sanderses required to tender the loan proceeds. However, that is the order of rescission which MACU seeks to be reordered to protect its interests in the mortgage. Although MACU did not return any payments to the Sanderses, TILA itself allows a court to modify the procedures set out requiring the exchange of money and property.

MACU submitted an Affidavit of Cathy Smoyer, stating that MACU did not pursue a deficiency judgment against the Sanderses, which by her estimation based on the balance of the loan and the amount of the sale, would have been just over $100,000. She states that essentially

MACU gave the Sanderses this amount in debt forgiveness.

The Sanderses never clearly state whether they could repay all the loan proceeds or not. Rather, the Sanderses argue that the court should consider MACU's self help foreclosure and eviction actions as a waiver of its right to the Sanders' tender obligation and MACU should be estopped from claiming that the Sanders' tender obligation is impossible. The Sanderses do not think that MACU should get any equitable credit for failing to seek the deficiency amount or letting them live in the house rent free for two years. In addition, the Sanderses believe that the court should re-value the home as of the current date in order to complete the rescission process.

The Sanderses position is unworkable. The court could not consider the present value of the home to determine the rights of two parties no longer connected to the home. The current owner of the home could have added to the home or could have allowed the home to fall into serious disrepair. Therefore, the cort agrees with MACU that rescission is impossible or impracticable at this point.

The Sanderses also argue that MACU violated TILA by doing a Notice to Quit while the case was on appeal. The Sanderses claim that TILA allows them to stay in possession of the property until MACU meets its obligations and MACU never met its obligation. MACU, however, argues that it had a decision from this court dismissing the TILA rescission claim as without merit and the Sanderses did not seek a bond staying the decision on appeal. Therefore, MACU argues that it was within its right to serve a Notice to Quit on the Sanderses when it did. The court agrees with MACU that exercising its rights based on a decision from this court and the Sanderses' failure to stay that decision on appeal does not constitute a TILA violation.

There is no claim that MACU physically forced eviction. However, the Sanderses claim that MACU forced them to leave the house by filing the Notice to Quit because it could have

subjected them to treble rent payments if they lost the rescission claim. MACU, however, argues that it was within its right to serve the notice, the Sanderses had benefitted from living in the house rent free for two years, and the Sanderses made the decision to voluntarily leave the home. This does not constitute a TILA violation.

The Sanderses also argue that the Notice to Quit was unethical because counsel to the parties in this case had agreed to allow the Sanderses to remain in the case while the case was proceeding. MACU, however, does not believe that such an agreement extended to an appeal of the decision. Although there may have been a failure to fully communicate, the court finds nothing unethical in what occurred.

The court concludes that the equities involved in this case justify a reordering of the TILA rescission provisions. Even if the Sanderses were entitled to rescind the loan when they did, MACU took justifiable and reasonable steps to ensure their interests.

**3. TILA Damages**

MACU raises an issue that the Sanderses' TILA claim is limited to its rescission claim. This court dismissed the TILA damages claim and the Sanderses did not appeal that issue. The Sanderses do not claim that they have a TILA damages claim anymore. But, they seek damages incident to the rescission violation, such as moving expenses and rent payments. MACU states that the rescission remedy is separate from any claims for damages. Under TILA, even damages resulting from a rescission violation would come under the general damages provisions and this court already dismissed the claim. In addition, because the court finds that the Sanderses were only entitled to the three-day rescission period, that the equities of the case favor a re-ordering of the rescission process, and that MACU's actions did not violate TILA, the Sanderses would not be and are not entitled to damages associated with rescission.

**4. Cathy Smoyer Affidavit**

The Sanderses object to Cathy Smoyer's Affidavit. She is a records custodian for MACU and is testifying about what is contained in the file. She also has knowledge of MACU's actions once the Trustee Sale occurred. The Sanderses ask the court to strike all her testimony because she has no first-hand knowledge of the loan closing and bar her from any further participation in this case. The court concludes, however, that Smoyer's Affidavit does not overstep her role as a records custodian and her position with respect to the Trustee Sale. Therefore, the court finds no basis for striking Smoyer's Affidavit.

**CONCLUSION**

Based on the above reasoning, Defendant MACU's Motion for Summary Judgment is GRANTED, Plaintiffs' Motion for Summary Judgment is DENIED, and Plaintiff's Motion to Strike is DENIED. The Clerk of Court is directed to close the case, each party to bear his, her, and its own costs.

DATED this 3rd day of November, 2014.

BY THE COURT:

Dale A. Kimball,
United States District Judge